BERNSTEIN, APPELLEE, *v.* FIREMAN'S FUND AMERICAN LIFE INS. CO., APPELLANT.

[Cite as Bernstein v. Fireman's Fund Ins. Co. (1970), 24 Ohio App. 2d 103.]

(No. 10993—Decided March 9, 1970.)

*Messrs. Goodman & Goodman,* for appellee.
*Messrs. Dolle, O'Donnell, Cash, Fee & Hahn,* for appellant.

HESS, J. This is an appeal from a judgment entered by the Hamilton County Municipal Court in favor of the plaintiff-appellee pursuant to a group insurance plan and

policy issued by the defendant-appellant wherein the wife of the plaintiff-appellee was insured for medical expenses. Herein, Benjamin Bernstein, plaintiff-appellee, will be referred to as plaintiff, and Fireman's Fund American Life Insurance Company, defendant–appellant, will be referred to as defendant.

It appears from the record that plaintiff was a partner in the firm of Touche, Ross, Bailey and Smart and that for a consideration he and members of his family were covered under a medical group insurance plan. This plan under the provision and heading of "Comprehensive Medical Insurance" required the reimbursement or payment to plaintiff for reasonable charges made by a physician and surgeon for professional medical or surgical services rendered to plaintiff or a member of his family.

Adrienne Bernstein, deceased, was the wife of plaintiff and covered as a member of plaintiff's family. Before her death, Adrienne Bernstein required and received the services of a dentist, one Jack L. Benmayor, D. D. S. For his services he made the charge of $2,800. There is no dispute as to whether the dental service was rendered or the sum charged was reasonable.

The defendant denies it is obligated to pay the dentist's charges and contends that such charges or expenses for dental services required by plaintiff's wife are excluded by the terms of the insurance contract.

After permitting an amendment to the plaintiff's petition by interlineation alleging the reasonableness of the dentist's charges, and the overruling of the defendant's motion for summary judgment, the cause went to trial without a jury.

The exclusionary clause of the insurance contract with which we are concerned is found in the paragraph under the sub-heading "Expenses not covered" which reads:

"(2) (j) Any expense caused by or on account of treatment on or to the teeth, nerves within the teeth, gingivae, or alveolar processes, except to malignant tumors and except to the extent necessary for repair or replacement of natural teeth to which damage is caused solely by acci-

dental bodily injury as a result of external force within 180 days of such injury.'' We are not concerned with the accident feature quoted.

The bill of exceptions signed by the trial judge on December 9, 1969, discloses it was stipulated and agreed by counsel for both parties that if Doctors Gerald Klatzkin, Robert Scheig and Fred Goldman were called as witnesses they would testify in keeping with reports contained in letters written by them relative to the physical condition of the plaintiff's wife before and at the time she received the dental service in question. The insurance contract was stipulated. It was further stipulated that if Dr. Jack Benmayor, dentist, was called as a witness he would testify in keeping with his deposition. The doctors' reports, contract of insurance, and the deposition were marked as exhibits and received in evidence and the plaintiff rested. The defendant rested without offering additional evidence.

Dr. Robert Scheig reported he had ''cared for Mrs. Benjamin Bernstein for several years during which time she was treated for primary biliary sclerosis. Because of the lack of bile flow into the small intestine severe malobsorption was one of her principal abnormalities, and this malabsorption resulted in osteomalcia. As a result her facial bones as well as other bones became demineralized and many abnormalities of oral hygiene resulted. In order to improve her already markedly impaired nutritional state, therapy was necessary for her teeth.''

Dr. Gerald Klatzkin confirmed the diagnosis made by Dr. Scheig, and concluded as follows: ''There can be no doubt that her (Mrs. Bernstein) dental disease was secondary to her underlying biliary cirrhosis, a disorder frequently complicated by malabsorption of fat, fat-soluble vitamins A and D, and calcium. * * * Amongst other bones involved in the process of demineralization were those of the jaws. * * * There can be no doubt that her dental disease was secondary to her underlying biliary cirrhosis and required special treatment.''

Dr. Frederick M. Goldman, an internist, confirmed the conclusion reached by Doctors Scheig and Klatzkin,

and reported, "Mrs. Benjamin (Adrienne) Bernstein suffered and succumbed to biliary cirrhosis."

In his deposition, Dr. Jack L. Benmayor, dentist, testified as follows:

"Q. Dr. Benmayor, when you talk about root canal work, I suppose that refers to work on what would be called nerves within the teeth, is that right?

"A. Yes, um-hum.

"Q. What are gingivae?

"A. Gingivae is the gum tissue which lies on bone and surrounds each tooth.

"Q. And what are the alveolar processes?

"A. Well, this is the underlying bone basically that the gingivae does lie on and which surrounds and encompasses each tooth.

"Q. And it would be fair, would it not, to say that all the work that you did upon Mrs. Bernstein was performed either upon the teeth, the nerves within the teeth, the gingivae or the alveolar processes?

"A. Yes.

"Q. And you did not work on any part of her body or her mouth structure other than the teeth, the nerves within the teeth, the gingivae or the alveolar processes?

"A. Yes, that would be correct.

"Q. There were no malignant tumors which you yourself observed or treated, were there?

"A. No, there were not.

"Q. To the extent that her teeth required or that parts of her teeth and the adjacent structures required your attention, that was the result, I take it, of purely degenerative conditions?

"A. Right.

"Q. Either the result of disease or some form of natural degeneration in her mouth, is that right?

"A. Correct."

The sole issue in this case is whether the charge for dental services, admittedly reasonable, to the plaintiff's wife is within the exception to the exclusionary clause contained in paragraph (2) (j) page 11 of the insurance contract.

It must be conceded that plaintiff's wife suffered with and succumbed to "biliary cirrhosis." In Schmidt's *Attorneys Dictionary* of *Medicine,* the lexicographer defines biliary "as pertaining to or conveying bile; pertaining to the gall bladder or to the bile ducts." Cirrhosis is defined as follows: "a disease of the liver in which there is an overgrowth of the liver tissues playing merely a supporting role, and a destruction and partial regeneration of the cells which perform the vital function of the liver. The result is a distortion of the structural pattern of the liver with either an increase or a decrease in the size of the organ and an impairment of the function."

In paragraph (2) (j) of the insurance contract, under the heading "Expenses not covered," we find reference to "malignant tumors." The dictionary cited above defines malignant tumor as "a cancer, *i. e.,* a tumor which is destructive to the surrounding tissues, which spreads to distant parts of the body (by metastasis), which generally recurs after removal, and which finally causes the death of the patient."

There is no evidence that plaintiff's wife was treated by her dentist for anything other than nerves within her teeth, gingivae, or alveolar processes. There is positive evidence her dentist did not treat her for a malignant tumor. There is no evidence that Mrs. Bernstein was suffering from a malignant tumor either in her mouth or any other portion of her body.

A careful reading of the clause of the insurance contract with which we are concerned forces the conclusion that the only dental treatment covered is for malignant tumor. There was no such treatment by the dentist. In fact, the dentist testified that there was no malignancy which he either observed or treated.

To support the contention of the plaintiff, this Court would have to conclude that if a malignant tumor did exist in the body of Mrs. Bernstein and it caused dental problems, then the dental treatment was covered even though the dentist did not treat the malignancy itself. That construction of the language employed in the policy cannot be supported.

When we examine the language of the policy we find that the phrase "except to malignant tumors" appears before and not after the language "which damage is caused * * * by * * *." It is clear that the word "treatment" which is the first word of the paragraph is the word which is modified by the phrase, "except to malignant tumors," so that the proper reading of the exclusion is: This plan does not cover any expenses caused by or on account of treatment on or to the teeth, nerves within the teeth, gingivae, or alveolar processes, except to malignant tumors * * *. The language found in paragraph (2) (j) under the heading "Expenses not covered" is not ambiguous. Liability under a contract of insurance depends upon the terms thereof if the provisions are unambiguous.

Where a contract of health insurance expressly excludes payment for treatment on or to the teeth, nerves within the teeth, gingivae, or alveolar processes, but allows payment for treatment of malignant tumors, and no tumor in the mouth of a patient was treated, the insured cannot recover dental charges for treatment on or to the teeth, nerves within the teeth, gingivae or alveolar processes.

For the reasons presented we conclude that the judgment of the Hamilton County Municipal Court must be reversed and final judgment entered for the defendant.

*Judgment reversed.*

SHANNON, P. J. and HILDEBRANT, J., concur.